UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                        :

GUCCI AMERICA, INC. and CHLOÉ SAS,     :

         Plaintiffs,               :

     -against-               :

                                          :                08 Civ. _____

LAURETTE COMPANY, INC. and JENNIFER  :
MARIE MATTCHEN a/k/a JENNIFER MARIE  :
KIRK a/k/a JENNIFER BESSON d/b/a  :
THEBAGADDICTION.COM; ABC  :
COMPANIES; and JOHN DOES,  :

         Defendants.           :

                                         :

                                         :
-------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' EX PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER,
ASSET RESTRAINING ORDER,
EXPEDITED DISCOVERY ORDER,
AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**


                    Robert Weigel (RW 0163)
                    Howard S. Hogan (HH 7995)
                    GIBSON, DUNN & CRUTCHER, LLP
                    200 Park Avenue
                    New York, New York 10166
                    (212) 351-4000

                    *Attorneys for Plaintiffs Gucci America, Inc.
                    and Chloé SAS*

New York, New York
June 2, 2008

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 2

ARGUMENT ............................................................................................................... 8

I.    PLAINTIFFS HAVE MET THE STANDARD FOR A PRELIMINARY
      INJUNCTION. .............................................................................................. 8

II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR TRADEMARK
      RELATED CLAIMS. .................................................................................... 9

      A.    There Is a Likelihood of Confusion. .................................................. 9

            1.    Plaintiffs' Marks Are Strong and Distinctive. ........................ 10

            2.    The Infringing Products Are Virtually Identical to Authorized
                  Plaintiffs' Products. ................................................................. 11

            3.    The Competing Products Overlap and There Is No Gap to Bridge.
                  ................................................................................................. 11

            4.    Defendants' Marks Were Designed in Bad Faith. .................... 12

            5.    The Quality of Defendants' Products, Although Inferior, Is
                  Similar. ..................................................................................... 13

      B.    Plaintiffs Are Also Likely to Succeed on Their State Law Claims. ........ 13

      C.    Defendants' Activities Clearly Dilute Plaintiffs' Marks. ........................ 14

III.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF
      A PRELIMINARY INJUNCTION. .............................................................. 16

IV.   PLAINTIFFS ALSO SATISFY THE ALTERNATE STANDARD FOR A
      PRELIMINARY INJUNCTION. .................................................................. 17

V.    PLAINTIFFS ARE ENTITLED TO AN ORDER RESTRAINING
      DEFENDANTS' TRANSFER OF ASSETS. ................................................. 18

VI.   PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY. .................... 22

CONCLUSION ............................................................................................................. 23

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.,
   No. 94 Civ. 5620 (JFK), 1994 WL 719696 (S.D.N.Y. Dec. 28, 1994) .................................. 22

Am. Safety Table Co. v. Schreiber,
   287 F.2d 417 (2d Cir. 1961) ................................................................... 20

Biosafe-One, Inc. v. Hawks,
   07 Civ. 6764 (DC), 2007 U.S. Dist. LEXIS 88032 (S.D.N.Y. Nov. 29, 2007) ....................... 15

Consolidated Cigar Corp. v. Monte Cristi de Tabacos,
   58 F. Supp. 2d 188 (S.D.N.Y. 1999) ........................................................... 13

Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.,
   457 F. Supp. 1090 (S.D.N.Y. 1978) (Weinfeld, J.), aff'd, 607 F.2d 995 (2d Cir. 1979) ......... 17

Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC,
   500 F. Supp. 2d 296 (S.D.N.Y. 2007) .......................................................... 14

El Greco Leather Prods. Co. v. Shoe World, Inc.,
   806 F.2d 392 (2d Cir. 1986) ................................................................... 9

Fourth Toro Family L.P. v. PV Bakery, Inc.,
   88 F. Supp. 2d 188 (S.D.N.Y. 2000) ........................................................... 10

Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,
   111 F.3d 993 (2d Cir. 1997) ............................................................... 9, 11

GTFM, Inc. v. Solid Clothing Inc.,
   215 F. Supp. 2d 273 (S.D.N.Y. 2002) ................................................. 12, 14, 15

Gucci Am. Inc. v. Ashley Reed Trading, Inc.,
   00 Civ. 6041 (RCC), 2003 WL 22327162 (S.D.N.Y. Oct. 10, 2003) .............................. 10

Gucci Am., Inc. v. Action Activewear, Inc.,
   759 F. Supp. 1060 (S.D.N.Y. 1991) .............................................. 10, 12, 13, 14

Gucci Am., Inc. v. Duty Free Apparel, Ltd.,
   286 F. Supp. 2d 284 (S.D.N.Y. 2003) ........................................................... 9

Gucci America, Inc. v. HGL Enterprises,
   07 Civ. 5569 (RMB) (S.D.N.Y.) .................................................................. 3

**Table of Authorities**
**(Continued)**

Page(s)

Gucci America, Inc. v. MyReplicaHandbag.com,
    07 Civ. 2438 (JGK) (S.D.N.Y., March 4, 2008)........................................... 3, 21, 23

Gucci Shops, Inc. v. Dreyfoos & Assocs., Inc.,
    Case No. 83-709-CIV-ALH, 1983 WL 425 (S.D. Fla. Nov. 7, 1983)..................................... 10

Gucci Shops, Inc. v. R.H. Macy & Co., Inc.,
    446 F. Supp. 838 (S.D.N.Y. 1977) ........................................................... 10

Hasbro, Inc. v. Lanard Toys, Ltd.,
    858 F.2d 70 (2d Cir. 1988) ................................................................ 16

In re Vuitton Et Fils S.A.,
    606 F.2d 1 (2d Cir. 1979) ............................................................. 9, 16, 21

Karam Prasad, LLC v. Cache, Inc.,
    No. 07 Civ. 5785(PAC), 2007 WL 2438396 (S.D.N.Y. Aug. 27, 2007).................................. 15

Kraft Gen. Foods, Inc. v. Allied Old English, Inc.,
    831 F. Supp. 123 (S.D.N.Y. 1993) ....................................................... 12, 15

Le Sportsac, Inc. v. K Mart Corp.,
    754 F.2d 71 (2d Cir. 1985) ................................................................ 17

Levi Strauss & Co. v. Sunrise Int'1 Trading, Inc.,
    51 F.3d 982 (11th Cir. 1995) ............................................................. 20

Levitt Corp. v. Levitt,
    593 F.2d 463 (2d Cir. 1979) .............................................................. 20

Lexington Mgmt. Corp. v. Lexington Capital Partners,
    10 F. Supp. 2d 271 (S.D.N.Y. 1998) ...................................................... 13

Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,
    799 F.2d 867 (2d Cir. 1986) .............................................................. 10

Mason Tenders Dist. Council Pension Fund v. Messera,
    No. 95 Civ. 9341 (RWS), 1997 WL 223077 (S.D.N.Y. May 7, 1997) ................................... 21

Mattel, Inc. v. Internet Dimensions, Inc.,
    55 U.S.P.Q.2d 1620 (S.D.N.Y. 2000)......................................................... 1

Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,
    312 F.3d 94 (2d Cir. 2002) ............................................................. 8, 17

**Table of Authorities**
**(Continued)**

Page(s)

Mobil Oil Corp. v. Pegasus Petroleum Corp.,
  818 F.2d 254 (2d Cir. 1987) ........................................................................ 12

Moseley v. V Secret Catalogue, Inc.,
  537 U.S. 418 (2003)...................................................................................... 15

Multi-Local Media Corp. v. 800 Yellow Book Inc.,
  813 F. Supp. 199 (E.D.N.Y. 1993) .............................................................. 16

N. Face Apparel Corp. v. TC Fashions, Inc.,
  05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226 (S.D.N.Y. Mar. 30, 2006).................... 20

Nabisco, Inc. v. PF Brands, Inc.,
  191 F.3d 208 (2d Cir. 1999) ................................................................... 11, 15

NBA Properties, Inc. v. YMG, Inc.,
  No. 93 C 1533, 1993 WL 462836 (N.D. Ill. Nov. 9, 1993)........................... 12

NBA Props. v. Untertainment Records LLC,
  99 Civ. 2933 (HB), 1999 U.S. Dist. LEXIS 7780 (S.D.N.Y. May 26, 1999) ......................... 16

Nike Inc. v. Variety Wholesalers, Inc.,
  274 F. Supp. 2d 1352 (S.D. Ga. 2003).......................................................... 19

Nike, Inc. v. Top Brand Co.,
  2006 WL 2946472 (S.D.N.Y. 2006)............................................................. 18

Paco Rabanne Parfums, S.A. v. Norco Enters., Inc.,
  680 F.2d 891 (2d Cir. 1982) ......................................................................... 16

Paddington Corp. v. Attiki Importers & Distribs., Inc.,
  996 F.2d 577 (2d Cir. 1993) ......................................................................... 11

Polaroid Corp. v. Polarad Elecs. Corp.,
  287 F.2d 492 (2d Cir. 1961) ....................................................... 9, 10, 11, 13

Polo Fashions, Inc. v. Craftex, Inc.,
  816 F.2d 145 (4th Cir. 1987) ........................................................................ 10

Polymer Tech. Corp. v. Mimran,
  975 F.2d 58 (2d Cir.), amended by, reported at 1992 U.S. App. LEXIS 32204 (2d Cir. 1992),
  aff'd, 37 F.3d 74 (2d Cir. 1994)................................................................... 13

Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Servs. of Va., L.L.C.,
  144 F. Supp. 2d 241 (S.D.N.Y. 2001) .......................................................... 20

**Table of Authorities**
**(Continued)**

Page(s)

Rado Watch Co., Ltd. v. ABC Co.,
  No. 92 Civ. 3657 (PKL), 1992 WL 142747 (S.D.N.Y. June 8, 1992) ...................................... 11

Reebok Int'l Ltd. v. Marnatech Enters.,
  737 F. Supp. 1515 (S.D. Cal. 1989), aff'd , 970 F.2d 552 (9th Cir. 1992) .............................. 20

Republic of Philippines v. Marcos,
  862 F.2d 1355 (9th Cir. 1988) ................................................................................................ 20

Reuters Ltd. v. United Press Int'l,
  903 F.2d 904 (2d Cir. 1990) .................................................................................................... 17

Savin Corp. v. Savin Group,
  391 F.3d 439 (2d Cir. 2004) .................................................................................................... 14

SLY Magazine, LLC v. Weider Publications L.L.C.,
  No. 05-Civ-3940 (CM), 2007 WL 4577389 (S.D.N.Y. Dec. 17, 2007) .................................... 15

Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc.,
  154 F. Supp. 2d 586 (S.D.N.Y. 2001) ...................................................................................... 8

The N.Y. State Soc'y of Certified Public Accountants v. Eric Louis Assocs., Inc.,
  79 F. Supp. 331 (S.D.N.Y. 1999) ............................................................................................ 12

Tommy Hilfiger Licensing, Inc. v. Tee's Ave., Inc.,
  924 F. Supp. 17 (S.D.N.Y. 1996) ............................................................................................ 22

Topps Co., Inc. v. Gerrit J. Verburg Co.,
  41 U.S.P.Q.2d 1412 (S.D.N.Y. 1996) ...................................................................................... 9

Transfer Print Foils, Inc. v. Transfer Print of Am., Inc.,
  720 F. Supp. 425 (D.N.J. 1989) ............................................................................................... 17

Tri-Star Pictures, Inc. v. Unger,
  14 F. Supp. 2d 339 (S.D.N.Y. 1998) ...................................................................................... 14

Twentieth Century Fox Film Corp. v. Mow Trading Corp.,
  749 F. Supp. 473 (S.D.N.Y. 1990) .......................................................................................... 22

Virgin Enters., Ltd. v. Nawab,
  335 F.3d 141 (2d Cir. 2003) ........................................................................................... 8, 9, 11

Von Grabbe v. Ziff Davis Pub. Co.,
  91 Civ. 6275 (DLC), 1994 WL 719697 (S.D.N.Y. Dec. 29, 1994) ........................................... 8

**Table of Authorities**
**(Continued)**

Page(s)

Vuitton v. White,
  945 F.2d 569 (3d Cir. 1991) ........................................................................ 22

Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.,
  698 F.2d 862 (7th Cir. 1983) ........................................................................ 9

Yurman Design Inc. v. Diamonds & Time,
  169 F. Supp. 2d 181 (S.D.N.Y. 2001) ......................................................... 8

**Statutes**

15 U.S.C. § 1114 ............................................................................................ 9

15 U.S.C. § 1117(a) ....................................................................................... 18

15 U.S.C. § 1117(b) ....................................................................................... 18

15 U.S.C. § 1117(c) ....................................................................................... 18

15 U.S.C. § 1125(a) ....................................................................................... 9

15 U.S.C. § 1125(c) ....................................................................................... 15

Stop Counterfeiting in Manufactured Goods Act, Pub. L. No. 109-181, 120 Stat. 285 .............. 18

Trademark Dilution Revision Act of 2006, Pub. L. No. 109-312, 120 Stat. 1730
  (codified in relevant part at 15 U.S.C. § 1125(c)(1)) .................................. 14

**Other Authorities**

Joint Statement, 130 Cong. Rec. H 12,080 (1984) ...................................... 21

**Rules**

Fed. R. Civ. P. 30(b) ..................................................................................... 22

Fed. R. Civ. P. 34(b) ..................................................................................... 22

Plaintiffs Gucci America, Inc. ("Gucci") and Chloé SAS ("Chloé") (collectively, "Plaintiffs"), submit this memorandum of law in support of their application for a temporary restraining order, an order to show cause for preliminary injunction, and an order for expedited discovery against Defendants Laurette Company, Inc. and Jennifer Marie Mattchen a/k/a Jennifer Marie Kirk a/k/a Jennifer Besson, doing business as TheBagAddiction.com; ABC Companies; and John Does (collectively "Defendants").[1]

## PRELIMINARY STATEMENT

Defendants have, without authorization or consent, misappropriated Plaintiffs' world famous trademarks for use in connection with their counterfeiting business. Specifically, Defendants offer for sale, sell, and ship various types of handbags, as well as wallets and other consumer goods employing Plaintiffs' trademarks. In fact, Defendants' explicitly label their products as "Gucci" and "Chloe" products. Defendants knowingly traffic in these counterfeit products in reckless disregard of trademark laws and Plaintiffs' trademark rights.

Defendants are engaged in a practice that courts in this District and elsewhere have uniformly condemned. Their actions have caused Plaintiffs irreparable harm and an incalculable loss of goodwill and damages. In view of the foregoing, Plaintiffs respectfully request that this Court issue: (i) a temporary restraining order against Defendants enjoining their manufacture, importation, exportation, distribution, offer for sale, and sale of counterfeit products bearing Plaintiffs' trademarks; (ii) an asset restraining order; (iii) an order for expedited discovery

---

[1] Jennifer Marie Mattchen, as principle officer of the corporate defendant, is personally liable for the acts of infringement and dilution described below and is appropriately sued in her individual capacity. Mattel, Inc. v. Internet Dimensions, Inc., 55 U.S.P.Q.2d 1620, 1627 (S.D.N.Y. 2000). Based on information received to date, Plaintiffs believe that other entities and individuals, whose identities have not yet been discovered, are also liable as joint tortfeasors with Ms. Mattchen and the corporate defendant. Their identities will be the subject of discovery as this case proceeds.

allowing Plaintiffs to inspect and copy Defendants' books and records that go to the heart of this dispute; and (iv) an order to show cause why a preliminary injunction should not issue.

## STATEMENT OF FACTS

Plaintiffs are leaders in the design, marketing and distribution of premium, high-quality luxury items offered to the public under the Gucci and Chloé families of trademarks referenced in the Complaint filed herewith, among others (collectively, the "Plaintiffs' Marks").  See Declaration of Jonathan F. Moss dated May 30, 2008 ("Moss Decl.") ¶¶ 4-10; Declaration of Catherine Lebrun dated May 27, 2008 ("Lebrun Decl.") ¶¶ 4-10.  For more than fifty years, Plaintiffs have both developed their respective reputations and distinctive images across an expanding number of products, as well as both domestic and international markets (the "Plaintiffs' Products").  Id.  Plaintiffs' Marks are famous and widely-recognized brands. Plaintiffs have carefully built their reputations by, among other things, adhering to quality control standards and their respective commitments to customer service.  Id.  As such, the Plaintiffs' Products are manufactured pursuant to specific guidelines.  Id.  In addition, Plaintiffs spend millions of dollars annually to advertise and promote their products and their marks.  Id.

As a result of Plaintiffs' extensive marketing and promotional efforts, as well as the high quality of the Plaintiffs' Products, the Plaintiffs' Products have achieved an outstanding reputation among consumers.  Concurrently, the Plaintiffs' Marks have become well and favorably known in the industry and to the public as the exclusive source of the Plaintiffs' Products, and have come to symbolize the goodwill of Plaintiffs' Products.  Plaintiffs' marketing efforts, combined with their attention to quality and construction, have resulted in billions of dollars in sales of the Plaintiffs' Products.

Through the course of an ongoing investigation into sales of counterfeit versions of Plaintiffs' Products, Plaintiffs became aware that Defendants, among others, had started to offer

counterfeit versions of the Plaintiffs' Products for sale to consumers (the "Counterfeit Products").  Declaration of Mike Falsone dated May 29, 2008 ("Falsone Decl.") ¶ 2.  Plaintiffs commenced a diligent investigation into these activities and have brought suit against multiple parties.  Id. ¶¶ 2-3; see also Moss Decl. ¶ 16; Lebrun Decl. ¶ 16; Declaration of Robert L. Weigel, dated June 2, 2008 ("Weigel Decl."), Ex. 2-3.[2]  In particular, Plaintiffs have confirmed that Defendants were responsible for Counterfeit Products.  Falsone Decl., passim; Moss Decl. ¶ 22; Lebrun Decl. ¶¶ 22-23.  Defendants' Counterfeit Products closely resemble Plaintiffs' Products, including but not limited to numerous types of handbags, as well as wallets, watches, passport covers, belts, cosmetic pouches, and sunglasses, and display exact copies of the Plaintiffs' Marks and other design elements.

For example, shown below on the left is an image of an authentic Gucci "Horsebit Nail" Boston bag.  Moss Decl. ¶ 17.  Defendants' Counterfeit Products include a dead-ringer version of this "Horsebit Nail" Boston bag, shown on the right.  Id. ¶ 18.  The overall visual impact of Defendants' Counterfeit Product is not only confusingly similar to the authentic Gucci handbag shown on the left, they both bear Gucci's federally registered GUCCI trademark name, non-interlocking "GG" monogram, and repeating "GG" design.  See Moss Decl. Ex. 1 (U.S. Reg. Nos. 876,292; 959,338; 972,078; 1,106,722; 1,168,477; 1,321,864; 3,072,549).

---

[2]  Plaintiffs have filed two other actions with this Court against other defendants who similarly sold counterfeit versions of Plaintiffs' Products on their websites.  In the first action, Plaintiffs received a judgment and damages award of $4.3 million.  Weigel Decl. ¶ 3, Ex. 2 (Judgment dated March 4, 2008 in Gucci America, Inc. v. MyReplicaHandbag.com, 07 Civ. 2438 (JGK) (S.D.N.Y., March 4, 2008).  In the second action, Plaintiffs obtained a $ 2 million consent judgment from the defendants.  Weigel Decl. ¶ 4, Ex. 3 (Final Order and Consent Judgment dated Nov. 28, 2007 in Gucci America, Inc. v. HGL Enterprises, 07 Civ. 5569 (RMB) (S.D.N.Y.)).




*AUTHENTIC*                                        *COUNTERFEIT*

Similarly, shown below on the left is an image of an authentic Chloé Paddington Classic

Satchel.  Lebrun Decl. ¶ 17.  Defendants' Counterfeit Products include a dead-ringer version of

this authentic Chloé handbag, shown on the right.  Id. ¶ 18.  The overall visual impact of

Defendants' Counterfeit Product is not only confusingly similar to the authentic Chloé handbag

shown on the left, Defendants have even affixed a fraudulent tag that bears the federally

registered CHLOÉ trademark name, see id. Ex. 1 (U.S. Reg. Nos. 1,491,810; 1,513,535;

1,925,176; 2,745,487; 3,198,388), and PADDINGTON trademark name, see id. (U.S. Serial No.

78,863,562).




*AUTHENTIC*                                        *COUNTERFEIT*

Defendants' Counterfeit Products all follow this pattern – each displays copies of the Plaintiffs' Marks and uses the color scheme and design of the Plaintiffs' Products.

Defendants sell many of their Counterfeit Products through the use of an Internet website that may be located through the Uniform Resource Locator ("URL") designation <www.TheBagAddiction.com> ("Defendants' Website") and possibly others yet unknown to Plaintiffs.  Defendants offer their Counterfeit Products both directly to consumers through their website and to be resold to the public through conventional channels on a wholesale basis.

Plaintiffs' investigation has tied Defendants' Website, through archived webpages and information available through online databases, to Defendants Laurette Company, Inc. and Jennifer Marie Mattchen a/k/a Jennifer Marie Kirk a/k/a Jennifer Besson.  Defendants are based in Rocklin, California and Las Vegas, Nevada.  Falsone Decl. ¶¶ 75-76 & Exs. 16-17.

Defendants' Website itself makes liberal uses of Plaintiffs' Marks.  For example, shown below are true and accurate screen shots of Defendants' Website, repeatedly referring to its Counterfeit Products as "Gucci" and "Chloe" products.



Falsone Decl. ¶¶ 5-6.

Representatives of Plaintiffs contacted Defendants' Website, and purchased multiple Counterfeit Products, as detailed in the accompanying declaration of Michael F. Falsone.  Id., passim.  Plaintiffs have examined samples of Defendants' Counterfeit Products, and confirmed that such Counterfeit Products are inferior reproductions of the Plaintiffs' Products, complete with labels and hangtags bearing counterfeits of the Plaintiffs' Marks.  Among other identifiers, the Products are counterfeit because the workmanship, labeling, packaging, and general quality of assembly of the samples is poor and does not match the specifications or quality standards for genuine Plaintiffs' Products.  Moss Decl. ¶¶ 22-23; Lebrun Decl. ¶¶ 23-24.  Plaintiffs did not manufacture, inspect or package the Counterfeit Products, and did not approve the Counterfeit Products for sale or distribution.  Id.  Plaintiffs did not authorize Defendants to manufacture, import, export, distribute, advertise, sell, or offer to sell the Counterfeit Products.  Id.  Plaintiffs have not had the opportunity to control the quality and nature of the Counterfeit Products.  Id.

The purchases made by Plaintiffs' investigator also show that Defendants keep the profits of the sales from Counterfeit Profits at least temporarily with third-party financial institutions.  In particular, Plaintiffs' investigator attempted to purchase and paid for Defendants' Counterfeit Products designed to replicate a "Gucci" bag and a "Chloe" bag from www.TheBagAddiction.com.  Falsone Decl., passim.  In these instances, agents of Defendants accepted payment through processors of MasterCard, American Express, Visa, and Discover credit cards.  Id.

## ARGUMENT

I.    **PLAINTIFFS HAVE MET THE STANDARD FOR A PRELIMINARY INJUNCTION.**

Plaintiffs are entitled to either a temporary restraining order or a preliminary injunction upon a showing of: (1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) the existence of serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the plaintiff's favor. Virgin Enters., Ltd. v. Nawab, 335 F.3d 141, 145-46 (2d Cir. 2003); Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 96 (2d Cir. 2002).[3] A plaintiff "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent.'" Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc., 154 F. Supp. 2d 586, 597 (S.D.N.Y. 2001) (citation omitted). In an action for trademark infringement, where famous and distinctive marks like those owned by Plaintiffs plainly merit protection, "a showing that a significant number of consumers are likely to be confused" satisfies both irreparable harm and a likelihood of success. Virgin Enters., 335 F.3d at 146 (reversing denial of preliminary injunction).

Courts do not hesitate to grant provisional relief when distinctive intellectual property assets have been studiously copied, as they have in this case. Yurman Design Inc. v. Diamonds & Time, 169 F. Supp. 2d 181, 184-86 (S.D.N.Y. 2001) (preliminary injunction against use of plaintiff's trademark in jewelry advertisement); Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,

---

[3]    See also Von Grabbe v. Ziff Davis Pub. Co., 91 Civ. 6275 (DLC), 1994 WL 719697, at *1 (S.D.N.Y. Dec. 29, 1994) (the same standard applies for both preliminary injunctions and temporary restraining orders).

111 F.3d 993, 997-98 (2d Cir. 1997) (preliminary injunction against toy that violated plaintiff's

trade dress).[4]

## II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR TRADEMARK RELATED CLAIMS.

### A.     There Is a Likelihood of Confusion.

A proper likelihood of confusion analysis, whether conducted under the infringement (15

U.S.C. § 1114) or false designation of origin (15 U.S.C. § 1125(a)) prongs of the Lanham Act,

Virgin Enters., 335 F.3d at 146, looks at the factors set forth in Polaroid Corp. v. Polarad Elecs.

Corp., 287 F.2d 492, 495 (2d Cir. 1961):  (1) the strength of the plaintiff's trade dress; (2) the

similarity between the two dresses; (3) the competitive proximity of the parties' products in the

marketplace; (4) the likelihood that the senior user will bridge the gap, if any, between the

products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of the

defendant's product; and (8) the sophistication of the relevant consumer group.  Id.

In this case, however, the Court need not undertake a factor-by-factor analysis under

Polaroid because counterfeits, by their very nature, cause confusion.  See Gucci Am., Inc. v.

Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) (citing Topps Co., Inc. v.

Gerrit J. Verburg Co., 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y. 1996) ("Where the marks are

identical, and the goods are also identical and directly competitive, the decision can be made

directly without a more formal and complete discussion of all of the Polaroid factors.")).  Indeed,

confusing the customer is the whole purpose of creating counterfeit goods.  See In re Vuitton Et

Fils S.A., 606 F.2d 1, 5 (2d Cir. 1979) (granting writ of mandamus awarding TRO because "the

---

[4]  Courts base this relief on the trademark holder's "inability to control the nature and quality of the
infringer's goods . . . not because the infringer's goods are necessarily inferior."  Wesley-Jessen Div.
of Schering Corp. v. Bausch & Lomb, Inc., 698 F.2d 862, 867 (7th Cir. 1983); accord El Greco
Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392 (2d Cir. 1986).

very purpose of the individual marketing the cheaper [and virtually identical] items is to confuse the buying public into believing it is buying the true article"); see also Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

Moreover, in this case, a straightforward application of the Polaroid factors also demonstrates that the likelihood of confusion is extremely high:

### 1.    Plaintiffs' Marks Are Strong and Distinctive.

It is well established that Plaintiffs' Marks are famous, distinctive, and strong.  See, e.g., Gucci Am. Inc. v. Ashley Reed Trading, Inc., 00 Civ. 6041 (RCC), 2003 WL 22327162, at *9 (S.D.N.Y. Oct. 10, 2003) (determining as established facts under F.R.C.P. 56(d) that "Gucci owns the trademarks at issue" and "the trademarks are valid").[5]  Most, if not all, of the registered Plaintiffs' Marks are arbitrary or fanciful as applied to the goods or services with which they are used.  See Fourth Toro Family L.P. v. PV Bakery, Inc., 88 F. Supp. 2d 188, 195 (S.D.N.Y. 2000) ("H&H" is an arbitrary mark when used to indicate the source of bagels); see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986) ("registered trademarks are presumed to be distinctive and should be afforded the utmost protection").  To the extent there is any question as to the inherent distinctiveness of Plaintiffs' Marks, there is no

---

[5]  See also Gucci Am., Inc. v. Action Activewear, Inc., 759 F. Supp. 1060, 1063-64 (S.D.N.Y. 1991) (finding that Gucci Marks are not only "clearly fanciful," "strong," and have "secondary meaning," but also that the association with Gucci "overshadows the characteristics of the goods themselves"); Gucci Shops, Inc. v. Dreyfoos & Assocs., Inc., Case No. 83-709-CIV-ALH, 1983 WL 425, at *1-2 (S.D. Fla. Nov. 7, 1983) (because Gucci's "extensive media advertising reaches millions of retail customers throughout the United States," the "Gucci Marks have acquired and now enjoy distinctiveness, goodwill, and secondary meaning"); Gucci Shops, Inc. v. R.H. Macy & Co., Inc., 446 F. Supp. 838, 839 (S.D.N.Y. 1977) (Gucci name and green-red-green stripe "clearly identify the product with the plaintiff").

dispute that Plaintiffs' Marks have been prominently used for a long period of time, achieving widespread recognition and fame and, therefore, acquired distinctiveness.  Moss Decl. ¶¶ 4-10; Lebrun Decl. ¶¶ 4-10.

> **2.    The Infringing Products Are Virtually Identical to Authorized Plaintiffs' Products.**

Defendants employ identical counterfeits of Plaintiffs' Marks on their Counterfeit Products; thus, this Polaroid factor favors Plaintiffs.  See Rado Watch Co., Ltd. v. ABC Co., No. 92 Civ. 3657 (PKL), 1992 WL 142747, at *4 (S.D.N.Y. June 8, 1992) (granting preliminary injunction where it is "exceedingly difficult" to distinguish between authentic and infringing goods, "even in a side-by-side comparison").

Furthermore, minor differences do not matter because "the test of confusion is not whether the products can be differentiated" when compared side-by-side.  Fun-Damental Too, 111 F.3d at 1004.  Instead, the test is "whether they create the same general overall impression such that a consumer who has seen" the senior user's product would, "upon later seeing the [infringing product] alone, be confused." Id.; see also Paddington Corp. v. Attiki Importers & Distribs., Inc., 996 F.2d 577, 586 (2d Cir. 1993) (differences in the details of parties' products did not matter because "[e]ach label's lettering style, layout, and coloration, taken together, convey the same impression").

> **3.    The Competing Products Overlap and There Is No Gap to Bridge.**

The closer the defendants' goods are "to those the consumer has seen marketed under" the plaintiffs' brand, "the more likely that the consumer will mistakenly assume a common" source. Virgin Enters., 335 F.3d at 149-50.  Here, because both Plaintiffs and Defendants are in "the same segment of commerce," there is "no gap" between them at all.  Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 219 (2d Cir. 1999); see also GTFM, Inc. v. Solid Clothing Inc., 215

F. Supp. 2d 273, 296 (S.D.N.Y. 2002) (where both plaintiff and defendant sell jerseys, "[b]oth of these factors weigh heavily in favor of" finding a likelihood of confusion); Gucci Am., Inc. v. Action Activewear, Inc., 759 F. Supp. at 1065 ("Where, as here, the parties are selling very closely related, if not identical products, there is no gap to bridge.").

### 4.    Defendants' Marks Were Designed in Bad Faith.

If there is a showing that Defendants intended to copy Plaintiffs' Marks, "likelihood of confusion will be presumed as a matter of law." The N.Y. State Soc'y of Certified Public Accountants v. Eric Louis Assocs., Inc., 79 F. Supp. 2d 331, 340 (S.D.N.Y. 1999) (citing Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 258 (2d Cir. 1987)). Here, the similarities are overwhelming. Not content with simply copying the Plaintiffs' Marks and product designs themselves, Defendants also market their Counterfeit Products with an ersatz version of the Plaintiffs' names and labels. These facts make "the conclusion that [Defendants] wanted the public to identify its merchandise with [the Plaintiffs'] trademarks . . . inescapable." NBA Properties, Inc. v. YMG, Inc., No. 93 C 1533, 1993 WL 462836, at *3 (N.D. Ill. Nov. 9, 1993). This showing of bad faith entitles Plaintiffs to a presumption of confusion in the marketplace. See Kraft Gen. Foods, Inc. v. Allied Old English, Inc., 831 F. Supp. 123, 132 (S.D.N.Y. 1993) (courts may infer intent to capitalize on the plaintiff's goodwill "[w]hen a company appropriates an identical mark that is well known and has acquired a secondary meaning"); GTFM, Inc., 215 F. Supp. 2d at 297 (where similarities "are so strong that they could only have occurred through deliberate copying . . . a presumption arises that the copier has succeeded in causing confusion").[6]

---

[6]    See also Gucci Am., Inc. v. Action Activewear, Inc., 759 F. Supp. at 1065 ("Where the evidence 'show[s] or require[s] the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up,

5.      **The Quality of Defendants' Products, Although Inferior, Is Similar.**

If Defendants' Counterfeit Products are inferior, this Polaroid factor weighs in favor of Plaintiffs.  See Consolidated Cigar Corp. v. Monte Cristi de Tabacos, 58 F. Supp. 2d 188, 199 (S.D.N.Y. 1999); Gucci Am., Inc. v. Action Activewear, Inc., 759 F. Supp. at 1066 ("the existence of inferior infringing goods strengthens a plaintiff's 'interest in protecting its reputation from debasement'") (citation omitted).  The renown of Plaintiffs' Marks is due largely to Plaintiffs' rigorous quality control standards.  Moss Decl. ¶¶ 9, 23; Lebrun Decl. ¶¶ 7, 9. Plaintiffs' initial inspection of Defendants' Counterfeit Products revealed, among other things, poor construction, missing care, and incorrect buttons and hangtags.  See id.  More importantly, however, the "actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain."  Polymer Tech. Corp. v. Mimran, 975 F.2d 58, 62 (2d Cir.), amended by, reported at 1992 U.S. App. LEXIS 32204 (2d Cir. 1992), aff'd, 37 F.3d 74 (2d Cir. 1994).  Because Plaintiffs have no control over the quality of Defendants' Counterfeit Products, this factor further supports a finding of likelihood of confusion.

B.      **Plaintiffs Are Also Likely to Succeed on Their State Law Claims.**

Because so many of the Polaroid factors favor a finding of confusion, an award of preliminary relief is appropriate.  See, e.g., Lexington Mgmt. Corp. v. Lexington Capital Partners, 10 F. Supp. 2d 271, 288-89 (S.D.N.Y. 1998) (issuing preliminary injunction where only five of the Polaroid factors favor a likelihood of confusion).  For the same reason, Plaintiffs also have shown a likelihood of success on their trademark infringement, unfair competition and deceptive trade practices claims under New York State law.  Tri-Star Pictures, Inc. v. Unger, 14

---

then the inference of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit.'") (citation omitted).

F. Supp. 2d 339, 359 n.18 (S.D.N.Y. 1998) (because "the standards for trademark infringement
are essentially the same under the Lanham Act, New York law and the common law . . .
Defendants have similarly infringed upon Plaintiffs' marks under New York law and the
common law"); GTFM, Inc., 215 F. Supp. 2d at 300-02 (likelihood of success on federal
infringement claims supports likelihood of success on New York infringement, unfair
competition, dilution, and deceptive business practices claims).

### C.    Defendants' Activities Clearly Dilute Plaintiffs' Marks.

Plaintiffs also meet the standard for trademark dilution established in this Circuit:
"(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a
commercial use in commerce; (4) it must begin after the senior mark has become famous; and
(5) it must cause dilution of the distinctive quality of the senior mark."  Savin Corp. v. Savin
Group, 391 F.3d 439, 448-49 (2d Cir. 2004).

Here, the first four factors are beyond dispute.  Plaintiffs' Marks are undeniably famous
and distinctive, and Defendants began using infringing versions of Plaintiffs' Marks in
commerce long after the Plaintiffs first made them famous.  Moss Decl. ¶¶ 4-6; Lebrun Decl.
¶¶ 7-8; see also Gucci Am., Inc. v. Action Activewear, Inc., 759 F. Supp. at 1063-64.[7]

With respect to the fifth factor, in light of the Trademark Dilution Revision Act of 2006,
Pub. L. No. 109-312, 120 Stat. 1730 (codified in relevant part at 15 U.S.C. § 1125(c)(1)),
Plaintiffs need only establish a "likelihood of dilution" rather than "actual dilution."  See Dan-
Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 307 & n.87
(S.D.N.Y. 2007) (explaining that the Trademark Dilution Revision Act of 2006 established a
"likelihood of dilution" standard in place of an "actual dilution" standard); accord Karam Prasad,

---

[7]    See also Gucci Shops, Inc. v. Dreyfoos & Assocs., Inc., 1983 WL 425, at *1-2; Gucci Shops, Inc. v.
R.H. Macy & Co., Inc., 446 F. Supp. at 839.

LLC v. Cache, Inc., No. 07 Civ. 5785(PAC), 2007 WL 2438396, *3 (S.D.N.Y. Aug. 27, 2007)

(New York State dilution law requires mere "likelihood of dilution").  Plaintiffs, however, can

meet their burden under either standard.  Where, as here, "the junior and senior marks are

identical . . . actual dilution can reliably be proven through circumstantial evidence."  Moseley v.

V Secret Catalogue, Inc., 537 U.S. 418, 434 (2003).  In fact, "the closer the products are to one

another, the greater the likelihood of both confusion and dilution."  Nabisco, Inc., 191 F.3d at

222.  Defendants sell their merchandise for the obvious purpose of offering cheaper and inferior

version of Plaintiffs' Products.  It is hard to imagine circumstantial evidence that would show

more clearly a reduction in Plaintiffs' Marks' capacity to identify and distinguish officially

licensed goods and services.  See, e.g., Kraft Gen. Foods, Inc., 831 F. Supp. at 134-35 (it is

"abundantly clear" that dilution, in addition to infringement, occurs when defendant uses

plaintiff's marks "in the same markets and the names are similar enough to cause confusion

among the purchasing public").

Moreover, 15 U.S.C. § 1125(c) and New York State dilution law recognize two types of

dilution:  (1)  "blurring, which is the diminished ability of the mark to serve as a unique identifier

of the plaintiffs' goods and services," and (2) "tarnishment, which is the disparagement of the

mark's reputation."  Biosafe-One, Inc. v. Hawks, 07 Civ. 6764 (DC), 2007 U.S. Dist. LEXIS

88032, at *24 (S.D.N.Y. Nov. 29, 2007); see also SLY Magazine, LLC v. Weider Publications

L.L.C., No. 05-Civ-3940 (CM), 2007 WL 4577389, *14 (S.D.N.Y. Dec. 17, 2007) (New York

law).  Defendants' use of Plaintiffs' Marks to identify Defendants' goods runs the risk that

Plaintiffs' Marks "will lose [their] ability to serve as a unique identifier of the [Plaintiffs']

product[s]."  See GTFM, Inc., 215 F. Supp. 2d at 301 (New York State dilution claim established

by defendant's use of plaintiff's "05" trademark on competing jerseys) (citation and internal

quotation marks omitted).  Accordingly, Defendants are engaging in blurring of Plaintiffs'

Marks.  Similarly, Defendants are tarnishing Plaintiffs' Marks by using them on goods of lesser

quality.  Id.; Moss Decl. ¶¶ 23, 27-28; Lebrun Decl. ¶¶ 23-24, 28.

## III.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

As a matter of law, a showing of a likelihood of confusion is sufficient to establish

irreparable harm.  Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988); NBA Props.

v. Untertainment Records LLC, 99 Civ. 2933 (HB), 1999 U.S. Dist. LEXIS 7780, at *17

(S.D.N.Y. May 26, 1999).  Indeed, "[i]n a trademark case such as this, a substantial likelihood of

confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of

Rule 65(b)(1)."  In re Vuitton Et Fils S.A., 606 F.2d at 4.

Plaintiffs need not, however, rely solely on this presumption.  If this Court does not issue

an injunction, Plaintiffs will suffer very real harm in the form of unquantifiable lost sales and

market share.  See Moss Decl. ¶¶ 26-28; Lebrun Decl. ¶¶ 27-28; see also Paco Rabanne Parfums,

S.A. v. Norco Enters., Inc., 680 F.2d 891, 894 (2d Cir. 1982) ("Where there is . . . such high

probability of confusion, injury irreparable in the sense that it may not be fully compensable in

damages almost inevitably follows . . . [t]he likelihood of damage to reputation and good will,

even where there is no proof of lost sales . . . [and] entitles a plaintiff to preliminary relief.")

(citation omitted); Multi-Local Media Corp. v. 800 Yellow Book Inc., 813 F. Supp. 199, 202

(E.D.N.Y. 1993) ("Federal courts have long recognized the need for immediate injunctive relief

in trademark infringement cases due to the amorphous nature of the damage to the trademark and

the resulting difficulty in proving monetary damages."); Weigel Decl. Ex. 1 (remarks of

President George W. Bush upon signing the bipartisan Stop Counterfeiting in Manufactured

Goods Act, Mar. 16, 2006) ("Counterfeiting hurts businesses.  They lose the right to profit from

their innovation.  Counterfeiting hurts workers, because counterfeiting undercuts honest

competition [and] rewards illegal competitors.").[8]

Accordingly, both by presumption of law and on the strength of the specific facts of

injury shown, this Court has overwhelmingly sufficient evidence to warrant issuance of a

preliminary injunction against Defendants.

## IV.    PLAINTIFFS ALSO SATISFY THE ALTERNATE STANDARD FOR A PRELIMINARY INJUNCTION.

Plaintiffs also are entitled to a preliminary injunction under the alternate standard because

they have shown that (1) serious questions exist, going to the merits of the case, and that these

questions are fair ground for litigation, and (2) the balance of hardships tips in their favor.

Merkos L'Inyonei Chinuch, Inc., 312 F.3d at 96; Le Sportsac, Inc. v. K Mart Corp., 754 F.2d 71,

74 (2d Cir. 1985).

As long as there is at least one issue of sufficient importance "going to the merits to

create a firm ground for litigation," Plaintiffs have met their burden under the first prong of this

standard.  Reuters Ltd. v. United Press Int'l, 903 F.2d 904, 909 (2d Cir. 1990).  Because they

have shown a convincing likelihood of success on the merits, Plaintiffs, by definition, also have

raised very substantial objections and questions that are fair game for litigation.

The remaining issue, the balance of hardships, tilts decidedly in favor of Plaintiffs.  If no

injunction is issued, Plaintiffs will suffer significant, irreparable hardship because they will have

lost control over the very indicia that communicate "Gucci" and "Chloé" to millions of

---

[8]   The time that Plaintiffs have spent investigating Defendants and pursuing other counterfeiters is no impediment to a finding of irreparable harm.  A trademark owner need only fight one trademark battle at a time, and delay is no defense where, as here, Defendants' conduct was calculated to trade on Plaintiffs' reputation, and they could easily forgo their enjoined conduct.  See Cuban Cigar Brands N.V. v. Upmann Int'l, Inc., 457 F. Supp. 1090, 1097-99 (S.D.N.Y. 1978) (Weinfeld, J.), aff'd, 607 F.2d 995 (2d Cir. 1979); Transfer Print Foils, Inc. v. Transfer Print of Am., Inc., 720 F. Supp. 425, 440-41 (D.N.J. 1989).

consumers – Plaintiffs' Marks.  Moreover, countless consumers will continue to be misled by

Defendants' conduct and no later action by this Court could retrieve that lost good will.  See,

e.g., id. ("irreparable harm discussed earlier" meets plaintiff's burden under the balance of

hardships); Stop Counterfeiting in Manufactured Goods Act, Pub. L. No. 109-181, 120 Stat. 285

(codified in scattered sections of 18 U.S.C.) (Congressional finding that "ongoing counterfeiting

of manufactured goods poses a widespread threat to public health and safety"); Weigel Decl.

Ex. 1 ("[C]ounterfeiting hurts consumers, as fake products expose our people to serious health

and safety risks.  Counterfeiting hurts the government.  We lose out on tax revenue.").

Defendants, in contrast, could easily manufacture and sell apparel products that do not infringe

Plaintiffs' rights.

## V.    PLAINTIFFS ARE ENTITLED TO AN ORDER RESTRAINING DEFENDANTS' TRANSFER OF ASSETS.

The damages provisions of the Lanham Act provide that if Plaintiffs succeed on the

merits, as demonstrated above is likely, they "shall be entitled . . . to recover [among other

things] defendant's profits," 15 U.S.C. § 1117(a), treble their actual damages and prejudgment

interest because this is a counterfeiting case, id. § 1117(b), or statutory damages up to a

maximum of $1,000,000 "per counterfeit mark per type of goods . . . sold, offered for sale, or

distributed," id. § 1117(c).  "Type of goods" has been defined narrowly by courts to include a

specific kind or category of a good.  For example, courts have awarded statutory damages under

the Lanham Act based on the various "types" of shirts sold by a counterfeiting defendant. See,

e.g., Nike, Inc. v. Top Brand Co., 2006 WL 2946472 (S.D.N.Y. 2006) (Ellis, M.J.), adopted by

Chief Judge Wood on October 6, 2006.  In Top Brand Co., the court recognized that sweatshirts,

t-shirts, and polo shirts are each a different "type" of shirt, and awarded damages accordingly.

Id. at *3 (awarding $1,000,000 per four infringed marks and consecutively for sweatshirts, t-

shirts, and polo shirts, for a total of $12 million); see also Nike Inc. v. Variety Wholesalers, Inc.,
274 F. Supp. 2d 1352, 1374 (S.D. Ga. 2003) (awarding separate awards for counterfeits of shirts
and sweatshirts).

Here, Defendants infringed 6 Gucci marks on at least 20 different types of goods bearing
counterfeits of Gucci Marks.  See Falsone Decl. ¶ 10; Moss Decl. ¶ 5.  Thus, Plaintiffs are likely
to be entitled to an award of between $60,000 (assuming the minimum statutory damages of
$500 per counterfeit mark per type of goods sold) and $120 million (assuming the maximum
statutory damages of $1,000,000 per counterfeit mark per type of goods sold) for their trademark
infringement of the Gucci Marks, focusing on just one theory of damages.[9]  Similarly,
Defendants infringed 5 Chloé Marks on at least 8 different types of goods bearing counterfeits of
Chloé Marks.  See Falsone Decl. ¶ 31; Lebrun Decl. ¶ 5.  Thus, Plaintiffs are likely to be entitled
to an award of between $20,000 (assuming the minimum statutory damages of $500 per
counterfeit mark per type of goods sold) and $40 million (assuming the maximum statutory
damages of $1,000,000 per counterfeit mark per type of goods sold) for their trademark
infringement of the Chloé Marks, again focusing on just one theory of damages.[10]  Under this
theory of damages, Plaintiffs are therefore likely to be entitled to a total award of between
$80,000 and $160 million for their trademark infringement of both Gucci and Chloé Marks.

Multiple circuit courts have made clear that a district court has the inherent authority
pursuant to the Lanham Act to issue an order restraining a defendant's assets so that a plaintiff's
right to recovery of its damages is not later rendered meaningless.  See, e.g., Levi Strauss & Co.

---

[9]  $500  x  6 marks  x  20 types of goods  =  $60,000
     $1,000,000  x  6 marks  x  20 types of goods  =  $120 million

[10]  $500  x  5 marks  x  8 types of goods  =  $20,000
      $1,000,000  x  5 marks  x  8 types of goods  =  $40 million

v. Sunrise Int'l Trading, Inc., 51 F.3d 982 (11th Cir. 1995); Reebok Int'l Ltd. v. Marnatech

Enters., 737 F. Supp. 1515 (S.D. Cal. 1989), aff'd , 970 F.2d 552 (9th Cir. 1992); N. Face

Apparel Corp. v. TC Fashions, Inc., 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226, at *11

(S.D.N.Y. Mar. 30, 2006).  This is consistent with long-standing practices in the Second Circuit,

which provide that "[t]he framing of an injunctive decree responsive to the particular facts in a

trademark infringement and unfair competition suit is ordinarily within the domain of the trial

court," and that "every means of preventing continuance of deceptive practices is proper."  Levitt

Corp. v. Levitt, 593 F.2d 463, 469, n.10 (2d Cir. 1979) (citations omitted); Am. Safety Table Co.

v. Schreiber, 287 F.2d 417, 419-20 (2d Cir. 1961).[11]

In Reebok International Ltd. v. Marnatech Enterprises, the district court concluded that

the asset restraint was appropriate based on plaintiff's showing of:  (1) a "reasonable likelihood"

that "defendants engaged in a substantial business of counterfeit goods"; (2) immediate and

irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might

hide their illegal ill-gotten funds if their assets were not frozen.  737 F. Supp. at 1527.  The Ninth

Circuit, in affirming this decision, implied that it might be an abuse of discretion for a court to

fail to award equitable relief such as an asset freeze "if such an action were necessary to protect a

plaintiff's right to recovery of § 1117 profits and damages and to ensure that a defendant may not

benefit by willfully engaging in illegal trademark activity."  970 F.2d at 558-59.[12]

---

[11]  See also Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Servs. of Va., L.L.C.,
144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001) ("where plaintiffs seek both equitable and legal relief
in relation to specific funds, a court retains its equitable power to freeze assets") (emphasis in
original).

[12]  See also Republic of Philippines v. Marcos, 862 F.2d 1355, 1364 (9th Cir. 1988) (en banc) ("[a] court
has the power to issue a preliminary injunction to prevent a defendant from dissipating assets in order
to preserve the possibility of equitable remedies"); Mason Tenders Dist. Council Pension Fund v.
Messera, No. 95 Civ. 9341 (RWS), 1997 WL 223077, at *7 (S.D.N.Y. May 7, 1997) (acknowledging

As set forth above, Plaintiffs have shown that they are likely to succeed on the merits of their claims, and that they will suffer irreparable injury from Defendants' sale of Counterfeit Products.  Defendants are also likely to hide their assets.  Defendants trade in counterfeit goods; thus, unlike a legitimate business that may be subject to accounting and tax requirements and that has readily identifiable assets that may be used to satisfy judgments against it, there is no reason to conclude that Defendants will make their assets available for recovery or will adhere to the authority of this Court any more than they have adhered to federal and state trademark law.  See Falsone Decl. ¶¶ 99-100; Joint Statement, 130 Cong. Rec. H 12,080 (1984) ("[M]any of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon.").  The most likely reasonable inference is that Defendants will move quickly to remove monies subject to an equitable accounting to locations and accounts which neither Plaintiffs nor this Court will ever discover.  See, e.g., In re Vuitton Et Fils S.A., 606 F.2d at 5 (directing district court to issue an ex parte TRO in a trademark infringement case where notice would enable defendant to dispose of evidence and would "render fruitless further prosecution of the action").

This Court has already granted Plaintiffs Gucci and Chloé's request for an order restraining the defendants' transfer of assets in trademark infringement actions based on substantially similar facts.  See Weigel Decl. Ex. 4 (Temporary Restraining Order in Gucci America, Inc. v. MyReplicaHandbag.com, 07 Civ. 2438 (JGK) (S.D.N.Y. Mar. 27, 2007)).  Similarly, an asset restraining order limiting the transfer of Defendants' assets is critical here to maintain the status quo and preserve Plaintiffs' right to an equitable accounting.  See Tommy Hilfiger Licensing, Inc. v. Tee's Ave., Inc., 924 F. Supp. 17 (S.D.N.Y. 1996) (finding sufficient

that "[a]lmost all the Circuit Courts [including the Second Circuit] have held that Rule 65 is available to freeze assets pendente lite under some set of circumstances").

basis for issuance of <u>ex parte</u> order existed where notice would have allowed the trademark

infringers to destroy or hide the counterfeiting evidence); <u>Vuitton v. White</u>, 945 F.2d 569, 575

(3d Cir. 1991) (reversing denial of <u>ex parte</u> seizure order where plaintiff "was likely to succeed

in showing that defendants were using a counterfeit mark").

**VI.    PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY.**

District courts have broad power to permit expedited discovery allowing Plaintiffs to take

early depositions and to require early document production in appropriate cases.  <u>See</u> Fed. R.

Civ. P. 30(b) & 34(b).  Expedited discovery may be granted when the party seeking it

demonstrates:  (1) irreparable injury; (2) some likelihood of success on the merits; (3) some

connection between expedited discovery and the avoidance of irreparable injury; and (4) some

evidence that the injury that will result without expedited discovery looms greater than the injury

that defendant will suffer if expedited relief is granted.  <u>See Advanced Portfolio Techs., Inc. v.</u>

<u>Advanced Portfolio Techs. Ltd.</u>, No. 94 Civ. 5620 (JFK), 1994 WL 719696, at *3 (S.D.N.Y.

Dec. 28, 1994); <u>Twentieth Century Fox Film Corp. v. Mow Trading Corp.</u>, 749 F. Supp. 473,

475 (S.D.N.Y. 1990).

Plaintiffs are being irreparably harmed by Defendants' manufacture, importation,

offering for sale, and sale of the Counterfeit Products.  Plaintiffs, therefore, need to ascertain the

scope of Defendants' activities, Defendants' sources of the Counterfeit Products, any pending

advertisements, offerings, sales, or shipments of Counterfeit Products, other unauthorized use of

Plaintiffs' Marks, and the location of Defendants' ill-gotten profits without delay.  Moreover, in

order to prevent Defendants from hiding the profits of their counterfeiting, Plaintiffs respectfully

request that the Court also order expedited discovery from the banks, credit card companies, and

other financial institutions with evidence of these unlawful transactions, as well as from the

internet search engines, online shopping comparison sites, and other advertisers that advertise for

Defendants' website and Counterfeit Products. Only armed with that information can Plaintiffs gain a full and accurate picture of Defendants' infringing activities and ensure the complete cessation of the counterfeiting of Plaintiffs' Marks and Plaintiffs' Products by Defendants and Defendants' associates.

Plaintiffs are unaware of any reason that Defendants; their banks, credit card processors, or other financial institutions; or their advertisers, including internet search engines and online shopping comparison sites, would not be able to comply with these requests without undue burden. The discovery requested on a expedited basis in Plaintiffs' proposed temporary restraining order has been precisely defined and carefully limited to include only what is essential for the preliminary injunction. See, e.g., Weigel Decl. Ex. 4 (TRO entered in Gucci America, Inc. v. MyReplicaHandbag.com). More importantly, as stated in the supporting declarations and supra, Defendants have engaged in numerous deceptive practices that indicate Plaintiffs may lose the opportunity for meaningful discovery about the requested relief. Accordingly, the request for expedited discovery should be granted.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant an order temporarily restraining Defendants from selling their Counterfeit Products or any unauthorized

use of Plaintiffs' Marks, an order to show cause for preliminary injunction, and an order for

expedited discovery.


Dated: New York, New York
       June 2, 2008

                                      Respectfully submitted,

                                      GIBSON, DUNN & CRUTCHER LLP

                                      By:  _____
                                           Robert Weigel (RW 0163)
                                           Howard S. Hogan (HH 7995)
                                           200 Park Avenue
                                           New York, New York 10166
                                           (212) 351-4000

                                      *Attorneys for Plaintiffs Gucci America, Inc.
                                      and Chloé SAS*